IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

STEPHEN R. KING, )
)
Plaintiff, )
)
v. ) C.A. No. 10-098-GMS
)
DON ROBERTS, et al., )
)
Defendants. )

## MEMORANDUM

### I. INTRODUCTION

On February 8, 2010, plaintiff Stephen R. King ("King") filed a Complaint against remaining defendants former Deputy Attorney General Don Roberts ("Roberts"), the Town of Middletown ("Middletown"), Middletown Police Department ("Police Department"), and Detective Thomas Finch ("Finch").[1] (D.I. 2.) King initially appeared *pro se*. On June 2, 2010, King filed an Amended Complaint alleging violations of his Fourth and Fifth Amendment Rights and asserting claims of malicious prosecution, in violation of 42 U.S.C. § 1983, and defamation in violation of Delaware common law. (D.I. 7.) On February 5, 2013, counsel for King entered his appearance. (D.I. 48.) On March 8, 2013, Roberts filed a Motion for Judgment on the Pleadings. (D.I. 57.) The court granted-in-part and denied-in-part Roberts' motion on May 20, 2013. (D.I. 74.) The court's Order dismissed the claims raised against Roberts in his official capacity based on Eleventh Amendment immunity and dismissed the individual capacity claims

---

[1] On September 10, 2010, the Court entered an order dismissing the Delaware Attorney General's Office based on Eleventh Amendment immunity. (D.I. 8.) On October 7, 2013, the parties stipulated to the dismissal of Sandra Knauer and Middletown Counseling Services. (D.I. 98.)

arising from his advocative conduct based on absolute immunity. (D.I. 74.) Following completion of discovery, on October 31, 2013, Roberts filed a Motion for Summary Judgment. (D.I. 100.) On November 1, 2013, Middletown, the Police Department, and Finch (collectively "the Middletown Defendants") filed a Motion for Summary Judgment. (D.I. 104.) For the reasons stated below, the court will grant both Roberts' and the Middletown Defendants' motions for summary judgment.

## II.     BACKGROUND

On December 31, 2007, the Police Department responded to a 911 call made by a juvenile alleging that King had inappropriately touched him. (D.I. 118 at A-1.) King denied the accusation. (*Id.* at A-2.)

The juvenile had been staying with King for parts of December 30 and 31, 2007, because his mother was ill. (*Id.* at A-1.) King was a licensed clinical social worker and was treating the juvenile. (*Id.* at A-2.)

The juvenile told police that King had condoms, lubricant, and sex toys in a drawer next to his bed, along with pornography. (*Id.*) The juvenile further stated that King had marijuana in his residence and that he offered it to the juvenile. (*Id.* at A-2.) King denied ever having offered the juvenile marijuana or having smoked in his presence. (*Id.* at A-11.)

The juvenile's mother advised the police that her son "has numerous issues and can be manipulative." (*Id.* at A-2.)

Subsequently on December 31, 2007, the Police Department obtained and executed a search warrant for King's residence. (*Id.* at A-11.) The police found condoms and lubricant in the bedside drawer but did not find any sex toys. (*Id.* at A-2.) A printout of a shirtless male was found, though never seized. (*Id.* at A-2, A-26.) King acknowledged having adult pornography on his computer but denied having child pornography. (*Id.* at A-11.) The police seized computers, hard drives, and a small amount of marijuana from a pipe found in King's residence. (*Id.*) On January 15, 2008, the Middletown Police obtained warrants to examine the computers and hard drives. (*Id.*)

On February 7, 2008, Roberts, Finch, and Detective R. Scott Garland viewed image and video files from King's seized computers and hard drives depicting individuals engaged in sexual activity. (*Id.*) Roberts believed that the files depicted minors and therefore constituted illegal child pornography. (*Id.*) Roberts advised Finch to arrest King. (D.I. 113 at A-123.)

On February 8, 2008, King was arrested for twenty counts of unlawfully dealing in material depicting a child engaged in a prohibited act, two counts of unlawful sexual contact in the first degree, one count of possession of marijuana, and one count of possession of drug paraphernalia. (D.I. 118 at A-6–9.) That same day, the Police Department issued a news release on King's arrest that contained erroneous factual statements and presented as fact certain details that were still unknown or unverified at the time. (D.I. 118 at A-17–18.)

On March 3, 2008, Roberts obtained an indictment charging King with twenty counts of unlawfully dealing in material depicting a child engaged in a prohibited act and two counts of

3

unlawful sexual contact in the first degree. (D.I. 111 at A-34.) The charges for possession of marijuana and drug paraphernalia were subsequently *nolle prossed*. (*Id.* at A-35.)

On or about June 2008, Roberts went on a one-month leave of absence. (D.I. 112 at A-89.) State prosecutor Richard Andrews ("Andrews") took over the case. (*Id.* at A-93.) Andrews was unsure whether the individuals depicted in the images seized from King's computers and hard drives were under the age of eighteen. (D.I. 113 at A-165.) Andrews consulted with pediatric medical expert Dr. Allan DeJong. (*Id.* at A-161.) On June 10, 2008, Dr. DeJong stated that he could not conclude with medical certainty that the individuals depicted in the images were under the age of eighteen. (D.I. 111 at A-31; D.I. 113 at A-163.) On June 27, 2008, Andrews advised that the twenty counts of unlawfully dealing in material depicting a child engaged in a prohibited act be *nolle prossed* for insufficient evidence. (D.I. 111 at A-31; D.I. 113 at A-165.)

On July 2, 2008, Roberts returned from his leave of absence and resumed King's prosecution. (D.I. 111 at A-37–38). Roberts offered King a plea deal to plead guilty to two counts of misdemeanor unlawful sexual contact. (D.I. 111 at A-38.) King rejected the plea deal. (*Id.* at A-38, 49.)

On or about September 3, 2008, Roberts obtained an indictment charging King with two counts of felony unlawful sexual contact in the first degree and forty-two counts of obscenity for allegedly showing nude pictures to children. (D.I. 111 at A-50.)

On October 18, 2008, Roberts took a second leave of absence, and Andrews again took over the prosecution. (D.I. 112 at A-104.) On October 31, 2008, Andrews determined that the

4

state could not proceed with the obscenity charges, and those charges were also *nolle prossed*. (D.I. 112 at A-75.)

On November 26, 2008, Andrews ultimately *nolle prossed* the two counts of unlawful sexual contact in the first degree, (D.I. 111 at A-23.), and King pled guilty to two charges brought by means of an information: possession of drug paraphernalia and endangering the welfare of a child. (D.I. 112 at A-76.) King agreed to the revocation of his license as a clinical social worker in Delaware and agreed never to reapply for his license in Delaware. (*Id.*)

On July 7, 2009, King filed a petition to expunge his criminal record. (D.I. 111 at A-33.) The petition was granted on March 25, 2010. *See King v. State*, No. 98X-07-024-JOH, 2010 WL 1267115 (Del. Super. Ct. Mar. 25, 2010).

King asserts claims for malicious prosecution in violation of § 1983 and defamation under Delaware common law.[2]

## III. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

---

[2] King, in his Answering Brief, raises new arguments that the press release violated his "First Amendment rights and/or had a chilling effect on [his] exercise of his First Amendment rights (of sexual expression and/or to possess and/or view legal adult pornography in the privacy of his own home)." (D.I. 116 at 12.) To the extent that these are new causes of action or theories of liability, King made no attempt to amend his Complaint to assert a First Amendment violation or invasion of privacy claim. The court disregards these new theories of liability, not present in the Complaint and raised for the first time after the close of discovery. *See Spence v. City of Phila.*, 147 F. App'x 289, 292 (3d Cir. 2005) (precluding plaintiff from asserting a novel disparate impact claim at the summary judgment phase because plaintiff never pled the claim and defendant had no notice).

5

of law." Fed. R. Civ. P. 56(c); *see also Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998). Thus, summary judgment is appropriate only if the moving party shows there are no genuine issues of material fact that would permit a reasonable jury to find for the non-moving party. *Boyle*, 139 F.3d at 393. A fact is material only if it might affect the outcome of the suit. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). An issue is genuine if a reasonable jury could possibly find in favor of the non-moving party with regard to that issue. *Id.*

In deciding the motion, the court must construe all facts and inferences in the light most favorable to the non-moving party. *Id.* In determining the appropriateness of summary judgment, a court must review the record as a whole and "draw all reasonable inferences in favor of the nonmoving party, [but] may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The moving party is also entitled to judgment as a matter of law if the nonmoving party fails to make a sufficient showing on an essential element of its case for which it has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## IV. DISCUSSION

King asserts a claim under § 1983 that Roberts violated his Fourth and Fifth Amendment rights through pursuit of a malicious prosecution. (D.I. 7 at 1.) King also alleges that the Middletown Defendants defamed him by issuing a libelous press release. (*Id.* at 6-7.)

## A. § 1983 Malicious Prosecution Claim Against Roberts

To prove a malicious prosecution claim under 42 U.S.C. § 1983, a plaintiff must prove each of the following five elements:

> (1) the defendants initiated a criminal proceeding;
>
> (2) the criminal proceeding ended in plaintiff's favor;
>
> (3) the proceeding was initiated without probable cause;
>
> (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and
>
> (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009) (quoting *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)).

Roberts concedes the first and fifth elements.[3] (D.I. 101 at 11–12.) The court, however, finds that Roberts has failed to satisfy the third and fourth elements. Thus, summary judgment is proper.[4]

### 1. Probable Cause

King contends that the proceeding was initiated without probable cause. (D.I. 110 at 10–13.) He claims that probable cause was lacking because (1) Roberts incorrectly determined that the individuals in the images on King's computer were under the age of 18; (2) Finch's

---

[3] The first element, that Roberts initiated a criminal proceeding, is met because Roberts drafted the indictments against King which the grand jury returned as true bills. (D.I. 101 at 11.) The fifth element, that King suffered deprivation of liberty, is also met because King was held in default of bail for two weeks following his February 8, 2008, arrest. (D.I. 101 at 11–12.)

[4] The parties dispute the second element—whether the criminal proceedings terminated in his favor. (D.I. 101 at 12; D.I. 8–9.) Because King has failed make a *prima facie* showing as to the third and fourth elements, the court declines to comment on the second element.

application for an arrest warrant was based on this allegedly incorrect determination; and (3) the actual images may not have been shown to the Justice of the Peace reviewing the application. (*Id.* at 10.) King has failed make a *prima facie* showing that Roberts lacked probable cause.[5]

To challenge the validity of probable cause with respect to a search and/or arrest warrant, a plaintiff must prove that an affiant "knowingly and intentionally, or with reckless disregard for the truth," included a false statement in the warrant affidavit. *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978); *Edwards v. Kelly*, 136 F. App'x 468, 471 (3d Cir. 2005). Here, King merely contends that Finch's warrant application relied upon Roberts' "incorrect and inappropriate determination" that the images seized from King's computers depicted individuals under the age of eighteen. (D.I. 110 at 10.) His erroneous conclusion does mean that Roberts "knowingly and intentionally, or with reckless disregard for the truth" gave Finch false information as the basis for the warrant. *See Franks*, 438 U.S. at 155–56.

King further argues that probable cause is lacking because the Justice of the Peace and the Grand Jury were not shown the actual images in question. (D.I. 110 at 10.) King argues that these parties therefore were not in a position to make a determination of probable case. (*Id.*) A magistrate, however, need not view allegedly obscene materials prior to issuing a warrant. *New York v. P.J. Video, Inc.*, 475 U.S. 868, 874 (1986); *see also United States v. Miknevich*, 638 F.3d 178, 183 (3d Cir. 2011). Rather, a "reasonably specific affidavit detailing the content of a film

---

[5] The court excuses King's failure to allege lack of probable cause in his Amended Complaint, which was filed *pro se*. (D.I. 7.) When a plaintiff "proceeds *pro se,* his pleading is liberally construed and his complaint, 'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Skinner v. Holman*, 672 F. Supp. 2d 657, 659 (D. Del. 2009) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

8

generally provides an adequate basis for the magistrate to determine whether there is probable cause to believe that the film is obscene, and whether a warrant authorizing the seizure of the film should issue." *P.J. Video, Inc.*, 475 U.S. at 874. Here, the court finds that the evidence supports a determination of probable cause for King's arrest regardless of whether the Justice of the Peace or the Grand Jury viewed the actual images.

Moreover, a grand jury indictment "constitutes prima facie evidence of probable cause to prosecute." *Rose v. Bartle*, 871 F.2d 331, 353 (3d Cir. 1989). This evidence may be rebutted by demonstrating that the indictment was "procured by fraud, perjury or other corrupt means." *Id.* No such showing is made here.

Simply because Roberts made an incorrect determination does not mean that he lacked probable cause. "The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released." *Baker v. McCollan*, 443 U.S. 137, 145 (1979). Accordingly, the court finds that the criminal proceedings were initiated with sufficient probable cause.

2. Malice

With respect to the fourth element, King contends that there is a genuine issue of material fact as to whether Roberts acted maliciously or for a purpose other than bringing the plaintiff to justice. (D.I. 7 at 7.) A plaintiff may prove malice in a variety of ways. "Legal malice is not limited to motives of hatred or ill will, but may consist of defendant's reckless and oppressive disregard of plaintiff's rights." *Minatee v. Phila. Police Dep't*, 502 F. App'x 225, 230 (3d Cir. 2012) (quoting *Lippay v. Christos*, 996 F.2d 1490, 1503 (3d Cir. 1993)). Malice can also be

9

established by showing that the prosecution was brought for an "extraneous purpose" or that there was a "lack of belief in the guilt of the accused." *Id.*

Here, King contends that Roberts "acted maliciously or, at the very least, for a purpose other than bringing [King] to justice." (D.I. 110 at 14.) First, King argues that Roberts brought the charges "without a proper basis" because the images seized did not actually depict children under the age of eighteen. (*Id.* at 14.) Second, King states that Roberts brought such charges because of "his personal distaste of (even legal) pornography and, in particular, pornography involving homosexual activity." (*Id.*) Finally, King states that he was the only individual that Roberts ever charged with obscenity. (*Id.* at 15.) King argues, therefore, that Roberts "brought such charges in retaliation for the prior charges being dropped and [King]'s refusal to accept his plea offer." (*Id.*)

Roberts argues that the record is devoid of any evidence of malice. (D.I. 101 at 13.) The court agrees. In the absence of any evidence of personal ill will or hatred, King must provide evidence demonstrating a "reckless and oppressive disregard of plaintiff's rights" or "the use of a prosecution for an extraneous purpose or a lack of belief in the guilt of the accused." *See Minatee*, 502 F. App'x at 230. Even if Roberts had a personal "distaste" for all forms of pornography and had never previously prosecuted someone for obscenity, the court finds no reasonable factfinder would be able to draw an inference of malice from these facts. Roberts never had any prior encounters with King to suggest any other motive for prosecution. King has failed to make a *prima facie* showing of malice.

Having failed to provide the requisite evidence of malicious prosecution, King has not satisfied his burden of production. The court will grant Roberts' motion for summary judgment.

### B. Claims Against the Middletown Defendants

#### 1. Malicious Prosecution

King dismissed his claim for malicious prosecution against Finch in his brief opposing the Middletown Defendants' motion for summary judgment. (D.I. 116 at 9 n.2.) King has not argued that Middletown or the Police Department were personally involved in King's prosecution. *See Kossler v. Crisanti*, 546 F.3d 181, 198 (3d Cir. 2009) (rejecting vicarious liability or *respondeat superior* as the basis for a defendant's liability in a civil rights action). Thus, there is no cause of action for malicious prosecution against any of the Middletown Defendants.

#### 2. Defamation

King argues that the press release issued by the Police Department was defamatory because it was "riddled with inaccuracies and false statements." (D.I. 116 at 119.) King asserts that Finch issued the "libelous press release" and that "Detective Finch works for the Middletown Police Department, which should have codified correct procedures to prevent violations of civil liberties and the law. The Middletown Police Department is a wholly owned entity of the Town of Middletown, who should have exercised diligent oversight of their owned entity." (D.I. 7 at 6, ¶ 17.)

11

The court treats King's defamation claim as originating under Delaware common law. *See Brown v. Calabro*, 512 F. App'x 137, 139 (3d Cir. 2013) ("[D]efamation is actionable under 42 U.S.C. § 1983 only if it occurs in the course of or is accompanied by a change or extinguishment of a right or status guaranteed by state law or the Constitution." (alteration in original) (quoting *Clark v. Twp. of Falls*, 890 F.2d 611, 619 (3d Cir. 1989))).[6] King has dismissed his federal question malicious prosecution claim against the Middletown Defendants, the basis for exercising supplemental jurisdiction over King's state law defamation claim. *See* 28 U.S.C. § 1367(a). Because there is no longer an active federal question pertaining to the Middletown Defendants, the court declines to exercise supplemental jurisdiction. *See* § 1367(c)(3). The court dismisses King's defamation claims for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

Even if the court were to exercise jurisdiction, however, the claim would fail. King's defamation claim is barred by the Delaware County and Municipal Tort Claims Act ("the Act"). Under the Act, "all governmental entities and their employees shall be immune from suit on any and all tort claims seeking recovery of damages." 10 Del. C. § 4011(a). Additionally, for tort claims specifically brought against government employees:

> An employee may be personally liable for acts or omissions
> causing property damage, bodily injury or death in instances in
> which the governmental entity is immune under this section, but
> only for those acts which were not within the scope of employment

---

[6] King contends that the press release violated his Constitutional rights, and he therefore has a federal defamation claim under § 1983. (D.I. 116 at 11–16.) King's arguments that the press release also violated his First, Fourth, and Fourteenth Amendment rights, however, are not timely asserted and not grounded in law. There is no evidence that the press release triggered a "change or extinguishment of a right or status" guaranteed by law. *See Brown*, 512 F. App'x at 139.

>or which were performed with wanton negligence or wilful and
>malicious intent.

§ 4011(c).

None of the statutory exceptions to governmental immunity apply in this case. *See* § 4012. Furthermore, there is no conclusive evidence establishing who authored the press release. Even if the court assumes Finch authored it, as alleged by King, the record is devoid of evidence establishing that the press release caused "property damage, bodily injury or death." § 4011(c). Where physical damage to property is absent, economic damages such as King's loss of earnings do not constitute property damage for the purposes of the Act. *See Carr v. Town of Dewey Beach*, 730 F. Supp. 591, 602 (D. Del. 1990); *Dale v. Town of Elsmere*, 702 A.2d 1220, 1222–23 (Del. 1997). Moreover, "emotional distress and related injuries do not constitute 'bodily injury' as defined by the Tort Claims Act under Delaware law." *Dickerson v. Phillips*, No. N10C-08-221-PLA, 2012 WL 2236709, *2 (Del. Super. Ct. June 13, 2012). King also fails to put forth evidence that Finch (or anyone else within the Police Department) was acting outside the scope of employment, or that he was acting "with wanton negligence or wilful and malicious intent." § 4011(c). The Delaware County and Municipal Tort Claims Act bars King's defamation action against the Middletown Defendants.

## V. CONCLUSION

King cannot demonstrate the elements of (1) malice or (2) lack of probable cause, which are necessary to show malicious prosecution under 42 U.S.C. § 1983. Thus, the court grants Roberts' motion for summary judgment. The court also declines to exercise supplemental

13

jurisdiction over King's defamation claim against the Middletown Defendants and dismisses the claim for lack of subject matter jurisdiction. Thus, the court grants the Middletown Defendants' motion for summary judgment.

Dated: September 19, 2014

_____
UNITED STATES DISTRICT COURT